# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00706-CR

**Steven Alcala, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-900, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Steven Alcala on four counts of aggravated sexual assault of a child. The jury assessed punishment at 15 years in prison on two counts, 23 years in prison on the other two counts, and a $10,000 fine for each of the four counts. On appeal, Alcala requests a new punishment hearing. He contends that the trial court erred by permitting a witness to testify that Alcala would not be a good candidate for probation, both because the witness was not qualified and because the testimony infringed on his right to plead not guilty, to have a jury trial, to not incriminate himself, and to require the State to carry its burden of proof. Alcala also contends that prosecutors committed reversible error at the punishment phase of trial by referring to his failure to testify, and that his counsel rendered ineffective assistance when he failed to object to the prosecutors' arguments referring to his failure to testify or express remorse. We will affirm the judgment.

## BACKGROUND

Because Alcala challenges only his punishment, we will not extensively review the facts underlying the finding of guilt. The victim testified that Alcala sexually assaulted her during the summers of 2007 and 2008 while she was eleven and twelve years old. She said the assaults occurred while she was visiting her grandmother's house when Alcala lived on her grandmother's property. A police officer testified that Alcala said that, because of his drug and alcohol use, he could not remember or deny the acts the victim accused him of perpetrating. A cellmate of Alcala's testified that Alcala said he had sex with the victim four times while drunk and high on methamphetamines. The victim's grandmother and aunt testified, however, that the house was small enough and the grandmother's dachshunds vocal enough that no assault could have occurred unnoticed. A friend of Alcala's testified that she lived with Alcala next to the victim's grandmother in the summer of 2007 while he recovered from a foot injury. She testified that she did not notice anything consistent with sexual assaults on the child. The victim, the grandmother, and the friend all testified that they did not recall Alcala using drugs at the time. The jury found Alcala guilty on four counts of aggravated sexual assault of a child.

At the punishment phase, the focus became whether whatever prison sentence Alcala received should be probated. The victim's mother testified that, following the assaults, the victim began cutting herself. Alcala's friends testified that they would help him if he received probation. Alcala called an expert who testified that tests of Alcala showed that he was not a deviant or a pedophile and was a moderate to low risk to reoffend. She testified that, when Alcala had been dependent on multiple types of drugs, his judgment was likely impaired. The expert testified

that Alcala was a good candidate for probation. She also testified that he denied committing the offense, but agreed to undergo therapy in order to obtain probation. In rebuttal, the State called Marcos Rangel, the sole Hays County probation officer who supervises sex offenders. Rangel testified that sex-offender treatment would work better if the offender admits the offense and that a person who adamantly denied the offense would not be a good candidate for probation.

## DISCUSSION

Alcala complains that the trial court erred by overruling his objections to Rangel's testimony, that the prosecutors committed reversible error by commenting on Alcala's failure to testify, and that his trial counsel provided ineffective assistance by failing to object to the prosecutors' argument.

### Rangel's testimony

Alcala contends that the court erred by overruling his objections to Rangel's testimony that Alcala would not be a good candidate for probation because (1) Rangel was not qualified as an expert, and (2) the line of questioning infringed on Alcala's rights to due process.

The State called Rangel to rebut the testimony of the defense expert who testified that Alcala would be a good candidate for probation. Rangel testified that he had worked for the Hays County Adult Probation Department for twelve years, five of which he had spent supervising sex offenders. He testified that he is familiar with the sex-offender treatment programs offered in Hays County and Texas. He agreed when asked (without objection) whether "the very first thing that's required to successfully even begin sex offender treatment as a probationer would be

3

admission of the offense." The prosecutor later asked if, knowing what Rangel knows about the treatment programs, Rangel thought that a hypothetical defendant who denied committing the offense would be a good candidate for probation. After the court overruled Alcala's objections, Rangel responded that the person would probably not make a good candidate for probation.

*Qualification as an expert*

The court of criminal appeals has expressly held that "suitability is a matter 'relevant to sentencing' under the current version of Article 37.07, Section 3(a) when a defendant seeks community supervision" and that "a probation officer may give an opinion on a defendant's suitability for probation." *Ellison v. State*, 201 S.W.3d 714, 722-23 (Tex. Crim. App. 2006).[1] After a guilty finding, the trial judge may admit any evidence that is relevant to sentencing. *Id.* at 722; *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2012). The *Ellison* court held that probation officers can give their opinions as experts or, if they have interviewed the defendant, as a lay witness who has observed relevant facts. *Ellison*, 201 S.W.3d at 722-23. We cannot disturb the trial court's determination of a witness's qualifications as an expert and its decision to admit that expert's testimony absent a clear abuse of discretion. *Id.* at 723.

---

[1] Alcala cites a case in which a court of appeals rejected a probation officer's testimony on a defendant's suitability for probation as objectionable and irrelevant. *Johnson v. State*, 991 S.W.2d 427, 430 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). The court of criminal appeals's holding in *Ellison* diverges from the premise in *Johnson* that "evidence going to prove that an applicant for probation is or is not suitable is objectionable." *Compare id. with Ellison v. State*, 201 S.W.3d 714, 722-23 (Tex. Crim. App. 2006). The court of appeals in *Ellison* distinguished *Johnson* by noting that the *Johnson* court did not address the effect of the language in article 37.07 permitting the offer of evidence relevant to "any matter the court deems relevant." *Ellison v. State*, 165 S.W.3d 774, 776 n.2 (Tex. App.—San Antonio 2005), *aff'd*, 201 S.W.3d 714 (Tex. Crim. App. 2006).

In this case, Rangel did not testify that he had interviewed Alcala. Because he responded only to hypothetical questions about a defendant like Alcala, we will examine his testimony as expert testimony. *See id.*; Tex. R. Evid. 702. The probation officer in *Ellison* testified to the following:

> (1) she was employed by the 38th Judicial District Community Supervision and Corrections Department; (2) her job duties included supervising cases, doing intakes and doing presentence investigation reports; (3) she has a degree in psychology with an emphasis on sex crimes and aggression; (4) she has a degree in criminal justice; (5) she is a certified officer with the State of Texas; (6) she has had special training in sex offender cases and supervising sex offenders; and (7) she has attended several seminars and special training on violence, domestic violence, and sex offenders.

*Ellison*, 201 S.W.3d at 723.[2] Rangel testified that he had worked for the Hays County Adult Probation Department for twelve years, five of which he had supervised sex offenders. He was the only probation officer for sex offenders and was then supervising about 40 probationers at that time. He met with his probationers and did field visits. He testified that the therapists did intake procedures immediately and were primarily concerned with whether the probationer had taken responsibility for committing the offense. Though Rangel's testimony was less comprehensive than that in *Ellison*, Alcala has not demonstrated that the trial court abused its discretion by permitting Rangel to give opinion testimony.

---

[2] Alcala asserts that courts qualifying experts in matters not involving hard science must consider "whether (1) the field of expertise is a legitimate one; (2) the subject matter of the expert's testimony is within the scope of that field; and (3) the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *See Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled in irrelevant part by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). The court of criminal appeals in *Ellison* appears to treat the determination of whether a defendant is suitable for probation to be a legitimate field of expertise. *See* 201 S.W.3d at 723.

*Deprivation of rights*

Alcala contends that, by permitting Rangel to testify about his failure to admit responsibility, the trial court violated Alcala's rights to plead not guilty, have a jury trial, not incriminate himself, and make the State carry its burden of proof. *See* U.S. Const. amends. V, VI; Tex. Const. art. I, §§ 10, 19; Tex. Code Crim. Proc. Ann. arts. 1.04, 1.05, 1.12 (West 2005). He contends that the line of questions eliciting the opinion that a defendant's failure to admit guilt meant the defendant was unsuited for probation sent the message that anyone who asserted his constitutional and statutory rights would never be suited for probation.

Finding no cases on point, appellant urges that we look to cases governing the permissibility of prosecutorial argument for guidance on whether the prosecutor could permissibly ask a witness about the defendant's suitability for probation. The court of criminal appeals has held that a prosecutor can permissibly argue that a defendant has expressed no remorse when that is a fair summary of testimony. *Howard v. State*, 153 S.W.3d 382, 385-86 (Tex. Crim. App. 2004). The court in *Howard* noted that a prosecutor's comment on a defendant's failure to show remorse can be tantamount to a comment on his failure to testify. *Id.* (citing *Davis v. State*, 782 S.W.2d 211, 222 (Tex. Crim. App. 1989)). However, if there is evidence in the record supporting the comment, then the argument is not error. *Id.* at 386. In *Howard*, the trial court overruled the defendant's objection to this argument from the prosecutor: "That's the type of person you're dealing with in Jamaal Howard. And since that time not one feeling of remorse, not one word of sorry." The court of criminal appeals held in *Howard* that a peace officer's testimony that the appellant told him he had no remorse meant that the prosecutor could state during argument that the appellant

6

showed no remorse without improperly commenting on appellant's failure to testify. *Id.* When reviewing a trial court's ruling on the admission of evidence, an appellate court applies an abuse of discretion standard of review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

In this case, there was testimony from a fellow inmate that Alcala admitted committing the offenses but blamed drugs and alcohol. In his written statement, Alcala asserted that he did not remember committing the offenses, but blamed drugs and alcohol for masking any memory of any possible offense. These claims conflicted with the victim's testimony that appellant did not appear to be chemically altered, and other witnesses who denied that appellant was using drugs. The police detective who interrogated Alcala testified that he appeared lackadaisical during the interview—making gestures as if he were playing a keyboard, talking to the wall, and yawning as if the interrogation was "no big deal." All of this testimony came in at the guilt-innocence phase before the guilty verdict, before appellant's expert testified he would be a good candidate for probation, and before the prosecution asked Rangel to opine whether an offender who did not express remorse would be a good candidate for probation.

We conclude that the prosecutor's question and Rangel's response, like the prosecutor's argument in *Howard*, could reasonably be interpreted as referring to testimony already in front of the jury about the defendant's failure to show remorse before trial—not about his failure to testify during trial. The prosecutor's question and Rangel's response did not violate constitutional and statutory protections against improper comment on Alcala's choice to plead not guilty, have a jury trial, not incriminate himself, and make the State carry its burden of proof.

7

**Prosecutorial argument**

Alcala complains that both trial prosecutors committed reversible error when each referred to his failure to testify during argument. He complains of the following remarks made by the prosecutors:

> This defendant who sits here before you today, guilty of these four counts, has showed no remorse whatsoever for the things he has done to this girl sitting here in the courtroom. None, no remorse.
>
> . . . .
>
> Again, you can't hold the fact that he did not testify against him. We ask that you do not do that. But another thing that you can look at is, again, the testimony that he's giving you through interviews, that he's giving you from sitting here in this chair and the facial expressions and everything else that you deem appropriate as fact finders in this case. I ask you to look at all of those things. You won't see him ever admit to this offense.
>
> . . . .
>
> The other thing that I want you to keep in mind is what we heard from the defendant as far as remorse: Nothing. We heard nothing. He's never communicated to anyone that he was sorry for what he did. And, you know, don't be fooled by this whole thing of he didn't blame the victim. Read the report. He denied the offense. Who's to blame for something that you're not even admitting to? Isn't that big of him. He didn't blame the victim. Of course he didn't blame the victim because he knows what he did. What we have from this man is a lot of self-serving statements. We have no remorse. We have no willingness to admit anything.

To preserve error in jury argument, a party must: (1) contemporaneously object to the statement; (2) if the objection is sustained, request an instruction that the jury disregard the statement; and, (3) if the instruction is granted, move for a mistrial. *Cooks v. State*, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992). Because Alcala did not object to the argument at trial, he has not preserved this alleged

8

error for our review. Alcala argues that, because the argument touched on his right not to testify, he was excused from having to object. *See Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981); *Overstreet v. State*, 470 S.W.2d 653, 655 (Tex. Crim. App. 1971) ("The prohibition against such comment is mandatory and adverse effect of any reference to the accused's failure to testify is not generally cured by instruction to the jury.").

Permissible jury argument falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Jury argument by the State that refers to a defendant's failure to testify violates the defendant's Fifth Amendment right against compelled self-incrimination. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001); *see also* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005) ("Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."). The offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear before it can be deemed to violate the right against self-incrimination. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (citing *Bustamante*, 48 S.W.3d at 765). "It is not sufficient that the language might be construed as an implied or indirect allusion." *Id.* "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* In applying this standard, the context in which the comment was made must be analyzed to

9

determine whether the language used was of such character. *Id.* "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).

As with the questions to Rangel, the complained-of argument is a permissible comment on the testimony regarding Alcala's lack of remorse—particularly in the testimony from the fellow inmate who testified that Alcala admitted the offenses. Fair summarization of evidence is a proper subject for jury argument, and discussion of evidence that the defendant did not express remorse outside the courtroom can be proper argument. *Howard*, 153 S.W.3d at 385-86. The prosecutor's comments regarding Alcala's demeanor were neutral regarding what that demeanor was and merely emphasized what the jury could consider. The last argument section quoted above comes the closest to being an improper comment on his failure to testify, but the context reveals the focus on whether he had communicated remorse to others—i.e., the expert and the fellow inmate. Viewed in context of the record, these arguments are not improper comments on Alcala's failure to testify that constitute fundamental error.

**Ineffective assistance of counsel**

Alcala contends that his counsel was ineffective for failing to object to the prosecutors' argument regarding his failure to express remorse. To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984);

*Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App.1999).  As we have concluded above, in the context of the evidence presented in this case, the prosecutors' arguments were proper. Trial counsel's failure to object to proper argument was not error and does not constitute rendition of ineffective assistance of counsel.

## CONCLUSION

Finding no merit in the claims of error presented, we affirm the judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   January 11, 2013

Do Not Publish

11